UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL LUTE,<br><br>          Plaintiff,<br><br>   v.<br><br>MICHAEL JOHNSON and JOHN HARDISON,<br><br>          Defendants. | Case No. 1:08-cv-00234-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are Plaintiff's Motion for Summary Judgment, and Defendants' Motion for Partial Summary Judgment. (Dkts. 34, 32.) Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter will be decided on the record before this Court without oral argument. D. Idaho L. R. 7.1(b).

For the reasons that follow, the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendants' Motion for Partial Summary Judgment. Further, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the Court notifies the parties that it intends to grant summary judgment to Defendants on Plaintiff's remaining claims. Plaintiff shall have ten (10) days from the date of this Order to submit evidence

**MEMORANDUM DECISION AND ORDER - 1**

raising a genuine issue of material fact as to the sincerity of his belief that he must adhere to a strict kosher diet. If Plaintiff does not do so, the Court will enter judgment in favor of Defendants.

## PROCEDURAL HISTORY

The Court has authorized Plaintiff, a prisoner in the custody of the Idaho Department of Correction (IDOC), to proceed on his Amended Complaint. (Dkt. 6.) He asserts four claims: (1) a claim that Defendants violated the Free Exercise Clause of the U.S. Constitution by failing to provide Plaintiff with a kosher diet; (2) a claim that this failure also violated the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*; (3) a claim that in July 2006, Defendants placed Plaintiff in administrative segregation in retaliation for his request for a kosher diet; and (4) a similar retaliation claim arising from his placement in administrative segregation in October 2008. Defendants filed a Motion to Dismiss Plaintiff's retaliation claims, which the Court granted in part and denied in part on January 26, 2011. Plaintiff's October 2008 retaliation claim was dismissed for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995. (Memorandum Decision and Order, Dkt. 31.)[1] Plaintiff was allowed to proceed on his claim arising from his July 2006 placement in administrative segregation. (*Id.*)

---

[1] Because the Court has already dismissed Plaintiff's 2008 retaliation claim, it will not address that claim in this Order, despite the parties' discussion of it.

**MEMORANDUM DECISION AND ORDER - 2**

Both parties now move for summary judgment. Plaintiff moves for summary judgment on all remaining claims. Defendants move for summary judgment only on Plaintiff's July 2006 retaliation claim.

## FACTUAL BACKGROUND

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not contradicted by clear documentary evidence in the record.

On July 11, 2006, Plaintiff was transferred from the Idaho State Correctional Institution (ISCI) to the Idaho Maximum Security Institution (IMSI). On July 12, 2006, Plaintiff was moved to a medical cell on suicide watch. On an unknown date, Deputy Warden Michael Johnson came to Plaintiff in the medical unit and asked why Plaintiff was on a hunger strike. Plaintiff told Johnson that he would eat only kosher food and that he was not on a hunger strike. (Plaintiff's Statement of Material Facts, Dkt. 34-1 at 1-2.) Plaintiff describes himself as an observant member of the Jewish faith. On July 18, 2006, Plaintiff filed a formal notice, in writing, demanding a kosher diet. (Plaintiff's Affidavit, Dkt. 34-4, Ex. C.)

The request was denied because the IDOC does not offer a kosher diet. According to Katie Hall, the IDOC's Dietary Services Manager, inmates can choose to receive the mainline diet or one of five specialized diets. IDOC policy defines the diets as follows:

- **Mainline**: The menu for the general offender population that

**MEMORANDUM DECISION AND ORDER - 3**

provides an average daily caloric content of 2200 calories for female offenders and 2900 calories for male offenders.

- **Healthy Choice Diet**: A diet reduced in calories, fat, cholesterol, sodium and sugar.

- **Modified Consistency Diet**: A mainline diet with ground meats, soft fruits and vegetables.

- **Non-pork diet**: A diet provision for a pork-free alternative for food items containing pork.

- **Ovo-Lacto Vegetarian Diet**: A vegetarian diet with milk, cheese, other dairy items and eggs.

- **Vegan Diet**: A vegetarian diet with no animal products.

(Katie Hall Affidavit, Dkt. 58-2, Ex. A.)

Plaintiff claims that in retaliation for his efforts to obtain a kosher diet, Defendants placed him in administrative segregation, a restrictive housing unit with fewer privileges than general population. On July 15, 2006—after Plaintiff was moved to the medical unit but before his formal request for a kosher diet—Sergeant Webb issued Plaintiff a Disciplinary Offense Report (DOR) for sexual activity that had allegedly occurred on July 6, 2006, while Plaintiff was still housed at ISCI. (Kevin Burnett Affidavit, Dkts. 32-1, 52, Ex. A & B.) Webb issued the DOR after a detective from the Ada County Sheriff's Office conducted a polygraph examination of Plaintiff. (*Id.*, Ex. B.) The DOR states that during this polygraph, Plaintiff "admitted to allowing another offender to perform oral sex on him in the Gym." (*Id.*) Although Plaintiff claims that he never admitted to sexual activity (Pl. Stmt. of Mat. Facts at 2), he does not deny that he actually engaged in such activity.

**MEMORANDUM DECISION AND ORDER - 4**

The DOR noted that Plaintiff had previously been issued several DORs for sexual activity. Sergeant Belz, the "reviewing supervisor," signed the DOR on July 19, 2006. (Burnett Aff., Ex. B.)

On July 21, 2006, Plaintiff received a notice from Defendant Johnson that he had been referred to the Restrictive Housing Placement Committee. The notice listed three reasons for the referral: (1) to protect Plaintiff from other inmates; (2) to protect other inmates from Plaintiff; and (3) to "stabilize a volatile or difficult situation." (*Id.*, Ex. C.) The notice also informed Plaintiff that he had the right to attend a hearing, after which the committee would determine whether he should be placed in restrictive housing. (*Id.*) Plaintiff states that Johnson told him he would be placed in administrative segregation because he was an "admitted homosexual." (Pl. Stmt. of Mat. Facts at 2.) Plaintiff also states that he "denied being a homosexual or ever admitting any such thing[.]" (*Id.*)

Although the referral notice is dated nearly a week *after* Sergeant Webb issued Plaintiff the DOR for prohibited sexual activity, Plaintiff claims that he was referred to the Restrictive Housing Committee *before* he received the DOR. According to Plaintiff, the DOR was an attempt to justify the restrictive housing referral so it would "appear as if [J]ohnson had a legitimate governmental reason to place plaintiff in isolation." (*Id.*)

Plaintiff's restrictive housing hearing took place on July 25, 2006. (Burnett Aff., Ex. D.) The evidence adduced at the hearing showed that Plaintiff had an alert on file under the Prison Rape Elimination Act and that he had engaged in sexual activity with other inmates. According to the hearing report, Plaintiff admitted that he had consensual

**MEMORANDUM DECISION AND ORDER - 5**

sex with another inmate but insisted he did not rape anyone. (*Id.*) As the DOR did not charge Plaintiff with rape—only with consensual sexual activity—Dr. Green and Defendant Johnson found him guilty of the DOR. The committee recommended that Plaintiff be placed in administrative segregation. (*Id.*) Plaintiff claims that "Dr. Green did not want to sign the Ad/Seg referral, but [J]ohnson bullied her into signing it." (Pl. Stmt. of Mat. Facts at 2.) The warden at that time, John Hardison, now deceased, approved the recommendation.[2]

On July 27, 2006, two days after the restrictive housing hearing, Plaintiff's DOR hearing on the July 15, 2006 DOR for sexual activity took place. Sergeant Link, the hearing officer, found Plaintiff guilty of the DOR based on Sergeant Webb's report and Plaintiff's testimony at the hearing. (Burnett Aff., Ex. B.) As a result of the guilty finding, Plaintiff lost all property and commissary privileges for thirty days. Sergeant Link also sentenced Plaintiff to thirty days' detention but gave him credit for time served. (*Id.*)

## MOTIONS FOR SUMMARY JUDGMENT

### 1.  Standard of Law

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the

---

[2] In its September 20, 2011 Order, the Court noted that the Hardison's death mooted Plaintiff's claims against him in his individual capacity and stated that the current warden "shall be substituted for Warden Hardison for purposes of the official capacity injunctive relief claims." (Dkt. 49 at 5 n.1.)

**MEMORANDUM DECISION AND ORDER - 6**

summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit." *Id.* at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party may "cit[e] to particular parts of materials in the record," show that "the materials cited do not establish the . . . presence of a genuine dispute, or show that the "adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show "by [his]

own affidavits, or by the depositions, answers to interrogatories, and admissions on file"
that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324 (internal quotation
marks omitted).

The Court does not determine the credibility of affiants or weigh the evidence set
forth by the non-moving party. On the other hand, the Court is not required to adopt
unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205,
1208 (9th Cir. 1988).

The existence of a scintilla of evidence in support of the non-moving party's
position is insufficient. Rather, "there must be evidence on which the jury could
reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. If a party "fails
to properly support an assertion of fact or fails to properly address another party's
assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P.
56(e)(2). The Court may grant summary judgment for the moving party "if the motion
and supporting materials—including the facts considered undisputed—show that the
movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Moreover, the Court may enter
summary judgment in favor of a non-moving party, provided the other party is given
"notice and a reasonable time to respond." Fed. R. Civ. P. 56(f).

## 2.    Discussion of Retaliation Claim

Defendants seek summary judgment on Plaintiff's claim that Defendants placed
Plaintiff in administrative segregation in retaliation for requesting a kosher diet in 2006.
Defendant Johnson states that Plaintiff was placed in administrative segregation not

**MEMORANDUM DECISION AND ORDER - 8**

because of his diet requests, but because of several disciplinary convictions for prohibited sexual activity.

A retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985). "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

Defendants have met their initial burden of showing that there is no genuine issue of material fact as to Plaintiff's July 2006 retaliation claim. The documentary evidence in the record supports Defendants' assertion that Plaintiff was placed in administrative segregation because of sexual activity, not because he requested a kosher diet. The

**MEMORANDUM DECISION AND ORDER - 9**

hearing officers at both of Plaintiff's hearings relied on reports of Plaintiff's sexual activity. There is no evidence of retaliatory intent, nor is there evidence that Sergeant Webb or Sergeant Belz issued the DOR to justify Defendants' alleged retaliatory actions.

The burden now shifts to Plaintiff to bring forth evidence sufficient for a reasonable jury to conclude that Defendants' reliance on Plaintiff's sexual activity was pretextual and that Plaintiff was actually placed in administrative segregation in retaliation for his kosher diet request. He has failed to do so. Plaintiff offers nothing more than "bare allegations" that Defendants retaliated against him. *Rizzo*, 778 F.2d at 532 n.4. And there is nothing more than Plaintiff's own speculation that Defendant Johnson "bullied" Dr. Green into recommending that Plaintiff be placed in administrative segregation. Even if, as Plaintiff claims, the date on the DOR is incorrect and he was issued the DOR after his referral to the Restrictive Housing Committee, he has still not raised a genuine issue of material fact as to Defendants' motive. Although the events of which Plaintiff complains occurred within a few weeks of each other, there must generally be something more than simply timing to support an inference of retaliatory intent. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

Even if Plaintiff could show that Defendants acted with a retaliatory motive, he would still be unable to overcome Defendants' evidence that Plaintiff's placement in administration segregation was "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Plaintiff does not deny that he engaged in consensual sexual activity with another inmate, and it is beyond dispute that prohibiting sexual activity in

**MEMORANDUM DECISION AND ORDER - 10**

prison is a legitimate governmental interest. As this Court has previously held,

"[P]rotecting inmates from sexually-transmitted diseases and keeping health care costs

low justify the prohibition on sexual activity between inmates." *Mintun v. Peterson*, No.

1:06-00447-BLW, 2010 WL 1338148, at *11 (D. Idaho March 30, 2010); *see also Veney*

*v. Wyche*, 293 F.3d 726, 733 (4th Cir. 2002) ("[S]exual activity between [prisoners] . . .

would jeopardize prison security" and "raise concerns about the transmission of diseases,

such as HIV."); *Fields v. Smith*, 712 F. Supp. 2d 830, 868 (E.D. Wis. 2010) ("The

correctional environment can be dangerous, and one major area of security concern is

sexual activity, especially sexual activity among inmates, which has a history of being

extremely dangerous and volatile."). Reducing the risk of prohibited sexual activity by

segregating Plaintiff—an inmate with a history of disciplinary sexual offenses and a

recent DOR for sexual behavior—is rationally related to these legitimate interests.

Plaintiff has failed to raise a genuine issue of material fact as to his July 2006

retaliation claims. Therefore, the Court will deny Plaintiff's Motion for Summary

Judgment on that claim and grant Defendants' Motion for Partial Summary Judgment.

## 3.    Discussion of Kosher Diet Claims

Plaintiff claims he is entitled to summary judgment on his First Amendment and

RLUIPA claims based on Defendants' failure to provide him with a kosher diet.

Defendants have not moved for summary judgment on these claims.

### A.    *First Amendment Standard*

The Free Exercise Clause of the First Amendment absolutely protects the right to

MEMORANDUM DECISION AND ORDER - 11

believe in a religion; it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296 (1940). Inmates retain their free exercise rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 125 (1977) (internal quotation marks omitted). As long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction is valid. *Turner*, 482 U.S. at 89. To serve as a basis for a viable claim challenging a prison restriction under the Free Exercise Clause, an inmate's belief must be both sincerely held and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994).

### B.     *RLUIPA Standard*

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person . . . is in furtherance of a compelling governmental interest and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Under RLUIPA, the inmate bears the initial burden of showing that the prison's policy constitutes a substantial burden on the

**MEMORANDUM DECISION AND ORDER - 12**

exercise of the inmate's religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). In determining whether an inmate's religious exercise is substantially burdened, a court may not inquire "into whether a particular belief is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (quoting 42 U.S.C. § 2000cc-5(7)(A)). However, "the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Id.*

### C.    *Analysis*

The first question the Court must consider, under both the Free Exercise Clause and RLUIPA, is whether Plaintiff is sincere in his religious belief that he requires a kosher diet. *See Shakur*, 514 F.3d at 884; *Cutter*, 544 U.S. at 725 n.13. According to IDOC documentation, Lute first designated his religion as Jewish in 1986, after previously identifying himself as Christian. (William Loomis Affidavit, Ex. B, Dkt. 58-4.) In 1993, the prison received a letter from a New York rabbi stating that the rabbi considered Lute to be Jewish. (*Id.*, Ex. G.) The letter also stated that Lute should be allowed to comply with Jewish dietary laws and that a vegetarian diet "would serve as adhering to Kosher laws." (*Id.*)

Despite this evidence of Lute's longstanding self-identification as Jewish, Defendants have submitted evidence that from 2006 to 2010, Plaintiff has consistently purchased nonkosher food from the prison commissary, including rice noodles, nacho chips, salsa, corn tortillas, chili, beef stew, barbeque beef, roast beef and gravy, chili ramen noodles, beef ramen noodles, enchilada party mix, instant milk, and hot summer

**MEMORANDUM DECISION AND ORDER - 13**

sausage. (Hall Aff. at ¶ 26 and Ex. B.) Prison records also show that, from 2003 to 2009, Lute attended more Catholic, LDS, Wiccan, and Buddhist services and classes than Jewish services and classes. (*Id.*, Ex. E.) Until his request for a kosher diet in 2006, the only specialized diet Lute requested was a "lacto-ovo" diet, which had no red meat but included fish and dairy products; Plaintiff made this request in 1993. (*Id.*, Ex. C.)

Although "backsliding" or nonobservance of a religious practice is not dispositive, it is evidence of a prisoner's religious insincerity. *Oram v. Hulin*, No. 1:03-cv-00249-EJL, 2007 WL 2363376, at *4 (D. Idaho Aug. 16, 2007). Such evidence is particularly relevant where, as here, the prisoner's own actions directly contradict the core of his claim. Purchasing nonkosher foods—both before and after his kosher diet request—is completely inconsistent with Plaintiff's professed religious belief.

Plaintiff cannot prevail on either his First Amendment or RLUIPA claim unless his request for a kosher diet is rooted in a sincere religious belief. Because Plaintiff has "fail[ed] to properly address [Defendants'] assertion of fact" that Plaintiff's professed belief in a kosher diet is insincere, that fact as yet remains undisputed. Fed. R. Civ. P. 56(e)(3). Therefore, the Court will deny Plaintiff's motion for summary judgment on his First Amendment and RLUIPA claims. If Plaintiff wishes to avoid summary judgment against him on those claims, he must come forward with admissible evidence raising a genuine issue of material fact on the question of sincerity.

**MEMORANDUM DECISION AND ORDER - 14**

# ORDER

**IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment (Dkt. 34) is DENIED.

2.      Defendants' Motion for Partial Summary Judgment (Dkt. 32) is GRANTED. Plaintiff's July 2006 retaliation claim is dismissed with prejudice.

3.      Pursuant to Federal Rule of Civil Procedure 56(f), the Court hereby notifies the parties that it intends to grant summary judgment to Defendants on Plaintiff's remaining claims under the Free Exercise Clause of the First Amendment and RLUIPA.

Plaintiff shall have ten (10) days from the date of this Order to submit an affidavit or other evidence establishing that his belief that he must eat a kosher diet is a sincerely held religious belief notwithstanding his purchases of non-kosher food from the commissary and his lack of attendance at Jewish services. The Court will then consider whether summary judgment on Plaintiff's remaining claims is appropriate. If Plaintiff files nothing further, summary judgment will be granted to Defendants and the case dismissed.

DATED:  **March 16, 2012**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 15**